UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENNY LEE KREBS,<br><br>                                         Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>                                       Defendant. | Case No.:  16cv3096 JLS (BGS)<br><br>**REPORT AND RECOMMENDATION:**<br>   (1) **GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 20] AND**<br>   (2) **DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF No. 22]**<br>   (3) **REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On December 27, 2016, Plaintiff Penny Lee Krebs filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of disability insurance benefits and supplemental social security income under Titles II and XVI the Social Security Act. (ECF No. 1.) On April 24, 2017, the Commissioner filed her Answer and the Administrative Record, and the Court issued a briefing schedule.  (ECF Nos. 12-14.)  On

1

July 25, 2017, Plaintiff filed a Motion for Summary Judgment seeking reversal of the final decision denying benefits and payment of benefits, or, in the alternative, a remand for further administrative proceedings. (Pl.'s Mot. for Summary Judgment [EFC No. 20] ("Mot.").) Plaintiff argues the Administrative Law Judge ("ALJ") committed reversible error in rejecting the opinions of two treating physician's and Plaintiff's testimony regarding the severity of her symptoms. (*Id.*) On August 28, 2017, the Commissioner filed a Cross Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment. (Cross Mot. for Summ. J. ("Cross Mot.") [ECF Nos. 22-23].) Plaintiff filed a Reply on September 14, 2017. (ECF No. 24.)

The Honorable Janis L. Sammartino has referred this matter to Magistrate Judge Bernard G. Skomal on a report and recommendation basis. Pursuant to Civ. L.R. 7.1(d)(1), the Court finds the parties' cross-motions suitable for decision on the papers and without oral argument. After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, the Court **RECOMMENDS** Plaintiff's Motion for Summary Judgment be **GRANTED**, the Commissioner's Cross Motion for Summary Judgment be **DENIED**, and that the matter be remanded to the agency for further proceedings.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental social security income on August 24, 2012 alleging disability beginning on December 26, 2007. (AR 175-185.) Her application was denied initially and on reconsideration. (AR 113-117, 121-125.) Plaintiff received a hearing before an ALJ on February 4, 2015 at which Plaintiff was represented by counsel and testified, along with a Vocational Expert. (AR 34-58.) On May 29, 2015, the ALJ issued a decision finding Plaintiff was not disabled and denied Plaintiff's applications for benefits. (AR 18-28.) The Appeals Council denied review on November 2, 2016. (AR 1-2.)

///

///

## II. SUMMARY AND ANALYSIS OF THE ALJ DECISION

The Court briefly summarizes the ALJ's five-step analysis and then discusses the relevant portions of the decision and Administrative Record in more depth below in analyzing the particular issues raised in this appeal.

The ALJ's decision goes through each potentially dispositive step of the familiar five-step evaluation process for determining whether an individual has established his or her eligibility for disability benefits.[1] (AR 39-50.); *see Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724-25 (9th Cir. 2011); *see* 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 26, 2007. (AR 20.) At step two, the ALJ found Plaintiff had "the following severe impairments: history of epilepsy, controlled; carpel tunnel syndrome, status-post carpal tunnel surgery; osteoarthritis, bilateral knees; migraine headaches; and obesity." (AR 20). At step three the ALJ considers whether the claimant's impairments "meet or equal" one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings. *See* §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(d), 404.1525, 404.1526, 416.925, 416.926. Here, the ALJ found Plaintiff's impairments did not meet a listing.

---

[1] In order to qualify for disability benefits, an applicant must show that: (1) he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. §§ 423(d)(1)(A), (2)(A). An applicant must meet both requirements to be "disabled." *Id.* The applicant has the burden to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant bears the burden of proving he is disabled. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). But, at step five, discussed below, the Commissioner bears the burden of showing the claimant can do other kinds of work that exist in significant numbers in the national economy "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*

3

(AR 21-22.)

If the claimant does not meet a listing, the ALJ "assess[es] and makes a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's residual functional capacity ("RFC") is the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). The RFC is used at the fourth and fifth steps to determine whether the claimant can do their past work (step four) or adjust to other available work (step five). *Id.*

Here, the ALJ found the following RFC for Plaintiff:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, in ½ hour intervals; the claimant can sit, stand and/or walk 6 hours in an 8-hour workday with normal breaks; the claimant cannot push/pull with the legs; the claimant cannot climb ladders, but can occasionally climb stairs and ramps; the claimant cannot kneel, crawl, and balance; the claimant can occasionally stoop and bend; the claimant cannot walk on uneven ground; the claimant cannot do work requiring forceful gripping and/or grasping with either hand, due to carpal tunnel syndrome; and the claimant cannot work on heavy moving machinery, due to a history of seizure disorder.

(AR 22.)

At step four, the ALJ found Plaintiff could not do her past work. (AR 26.) At step five, the ALJ considers whether the claimant can do other work, taking into account the claimant's age, education, work experience, and the limitations in the RFC. 20 C.F.R. §§ 404.1520(a)(v). If the claimant can do other available work, then the claimant is found not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(g); *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). Here, the ALJ heard and relied on testimony from a vocational expert that work existed in significant numbers in the national economy for a person of Plaintiff's age,

education, work experience, and subject to the RFC found by the ALJ.  (AR 27-28, 54.)

As discussed below, Plaintiff challenges the ALJ's rejection of two treating physician opinions from Dr. Salvatore Tarantino and Dr. Ahmed Mohammed and the ALJ's rejection of Plaintiff's claims regarding the severity of her symptoms based on credibility.  (AR 23-25.)  As explained more below, Dr. Tarantino and Dr. Mohammed's opinions find Plaintiff is more limited that the RFC assessed by the ALJ.

## III.   SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision.  42 U.S.C. § 405(g).  This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  *See id.*; 20 C.F.R. § 404.900(a)(5).  The matter may also be remanded to the Social Security Administration for further proceedings.  42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).  The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).  The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## IV.   DISCUSSION

### A.   Rejection of Treating Physicians' Opinions

The ALJ rejected two treating physician opinions, those of Dr. Tarantino and Dr. Mohammed.  The ALJ acknowledged that both were treating physicians and the Commissioner does not suggest otherwise in her briefing.[2]  (AR 25.)  The Court first sets

---

[2] There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians);

out the requirements for rejecting the opinion of a treating physician and then considers whether the ALJ decision meets the standard as to each treating physician's opinion.

### 1. Applicable Law

Treating physician opinions are afforded greater weight "because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to substantial weight.") (internal quotation marks and citation omitted); *see also Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("We have made it clear that the medical opinions of a claimant's treating physicians are entitled to special weight"). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).[3] "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship,

---

and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995)). Generally, the weight to be given descends, with the greatest weight given to treating physicians and the least to non-examining physicians. *Id.* (citations omitted).

[3] The Commissioner argues treating physician opinions are not entitled to any special weight because those opinions are on issues reserved to the Commissioner. (Cross Mot. at 3 n.3.) It appears this may be why the Commissioner has not cited or addressed the standards that follow regarding rejection of a treating physician opinion. (*See supra* footnote 4.) However, "a treating physician's opinion *on disability*, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (emphasis added) ("In sum, reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctors medical opinion).

supportability, consistency with the record, and specialization of the physician." *Id.* (citing § 404.1527(c)(2)–(6)). Failing to consider the factors for weighing the opinion "alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676.

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the court's] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Id.* (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d at 1216). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)); *Trevizo*, 871 F.3d at 675.

"The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. Further, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d 995, 1012–13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).[4]

---

[4] Although, as discussed below, the Commissioner asserts reasons why the ALJ's rejection of Plaintiff's treating physicians' opinions should be affirmed, the Commissioner does not acknowledge or address the standards for rejection of a uncontradicted or contradicted treating physician opinion — clear and convincing reasons supported by substantial evidence or specific and legitimate reasons supported by substantial evidence. *Ryan*, 528 F.3d at 1198 (citations omitted).

7

In considering whether an ALJ has properly rejected a doctor's opinion, the court must rely only on the ALJ's stated bases for rejecting the claimant's disability claims. *Trevizo*, 871 F.3d at 677 n.4 ("Because the ALJ did not provide these explanations herself as a reason to reject [the treating doctor's opinion], the district court erred in looking to the remainder of the record to support the ALJ's decision, and we cannot affirm on those grounds."); *Garrison*, 759 F.3d at 1009 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## 2. ALJ's Rejection of Dr. Tarantino and Dr. Mohammed's Opinions[5]

The ALJ decision set forth the following in rejecting the opinions of Dr. Tarantino and Dr. Mohammad

> I have read and give less weight to the medical source statements of Dr. Tarantino, a treating physician, and Dr. Mohammad, a treating physician, as the medical evidence of record does not support these evaluations and assessments of functioning. (16F, pp. 1-2; 17F p.1). The claimant complained of headaches that worsened after the passing of her grandmother (9F, p.5). There is no objective support for her claims of such frequent migraines, and she had normal neurological examinations of her head. (11F, pp. 10, 16).

(AR 25.)

### a) ALJ's Rejection of Dr. Tarantino's Opinion

Dr. Tarantino, provided an opinion dated December 22, 2014, indicating Plaintiff has polyneuropathy, carpal tunnel syndrome, bilateral knee arthritis, seizure disorder, and numbness bilaterally in her wrists/hand, and pain bilaterally in her knees. (AR 788.) He

---

[5] The Court sets forth the ALJ's rejection of the two treating physician opinions at issue together because the ALJ decision combines the analysis. As explained below, the Court attempts to distinguish the reasons given for rejecting one versus the other in considering the ALJ's rejection of each.

identifies pain and/or pain disorder and side effects from prescribed medication as conditions affecting Plaintiff's ability to work. (*Id.*) He indicates that the pain from the diagnosed conditions identified would constantly interfere with her concentration, persistence, and pace in performing work tasks. (*Id.*) As to lifting, she can occasionally lift less than 10 pounds but never anything 10 pounds or more. (*Id.*) As to sitting, she can sit cumulatively four hours in an eight-hour work day and for 30 minutes at one time. (*Id.* at 788-89.) As to standing or walking, she can stand or walk cumulatively one hour in an eight-hour work day and 15 minutes at one time. (*Id.* at 789) As to handling and finger manipulation, he finds she can engage in handling, grasping, turning, twisting with hands a maximum of one hour in an 8-hour day and the same for fine finger manipulation. (*Id.*) He finds she would need unscheduled breaks hourly in an eight-hour workday with 10-15 minutes of rest before returning to work. (*Id.*) As to medications, he indicates the following side effects: drowsiness from hydrocodone and SOMA and dizziness from Gabapentin. (*Id.*) He finds Plaintiff's claims as to pain credible and objectively supported by nerve conduction studies and x-rays. (*Id.*) Finally, he indicates that Plaintiff would have difficulty sustaining full time work because she suffers from chronic pain, she is unable to lift or stand, and she is on chronic pain medications. (*Id.*)

### (1) Analysis of ALJ's Rejection of Dr. Tarantino's Opinion

The ALJ rejects Dr. Tarantino's opinion based on the following, "the medical evidence of record does not support these evaluations and assessments of functioning." (AR 25) The few sentences that follow concern Plaintiff's migraines which were primarily addressed by Dr. Mohammad's opinion.[6]

---

[6] As explained below, these additional sentences regarding Plaintiff's migraines are also not sufficient to reject Dr. Mohammad's opinion. The same would be true as to Dr. Tarantino. Dr. Tarantino' opinion does not address Plaintiff's migraines specifically, but even if considered regarding the ALJ's rejection of Dr. Tarantino's opinion, this would not alter the Court's conclusion that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence to reject Dr. Tarantino's opinion.

Although the ALJ does not identify which, if any, opinion by another doctor contradicted Dr. Tarantino's opinion, for purposes of this analysis, the Court assumes Dr. Tarantino's opinion was contradicted by the state agency reviewers and considers whether the ALJ's decision meets the standard, outlined above, for rejecting a treating physician's contradicted opinion.[7] *See Trevizo*, 871 F.3d at 676 (finding the ALJ failed to expressly find a treating physician opinion contradicted the rejected opinion, but inferring from the record that it was and finding the decision failed to meet the standard for rejection of a contradicted treating physician opinion).

The ALJ has not explained why he is rejecting Dr. Tarantino's opinion other than the boilerplate language — "medical evidence of record does not support these evaluations and assessments of functioning" — that provides no insight into what medical evidence he is referring to as a basis for rejecting Dr. Tarantino's opinion. *Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

In looking to other portions of the ALJ decision, including those cited by the Commissioner, for reasons the ALJ may have rejected the opinion, the ALJ does discuss Plaintiff's carpel tunnel, one of the diagnoses identified in Dr. Tarantino's opinion. In noting a hand surgeon, not Dr. Tarantino, has recommended surgery for carpel tunnel, the ALJ seems to reject that recommendation based on a normal neurological exam from two

---

[7] The Court notes that generally the Court should not look to the record for reasons that the ALJ did not rely on himself, including considering a treating physician opinion to be contradicted when the ALJ did not provide that explanation. *See Trevizio*, 871 F.3d at 677 n.4 (finding the district court erred in looking to the remainder of the record for reasons to support the ALJ's rejection of a treating physician, including finding it contradicted). However, because the Court can infer it was contradicted, at least in part, by the state examining physicians', as argued by the Commissioner, and the ALJ decision fails to meet the less demanding standard for rejection of a contradicted opinion, the Court applies that standard.

years prior and more recent nerve conduction exams showing "mild carpel tunnel" (AR 25.) The ALJ describes the carpel tunnel condition as "mild to moderate" earlier in the decision when addressing Plaintiff's symptom testimony and finds Plaintiff's symptoms will be alleviated by the upcoming surgery and her weight loss. (AR 23.) However, events yet to come would not be a basis, at least not without further explanation, for rejecting Dr. Tarantino's opinion about her limitations prior to them. And, it is not clear how exactly the finding of mild to moderate carpel tunnel provides a basis to reject Dr. Tarantino's opinion. This would also only be of any consequence to the hand/finger grasping and manipulation limitations in Dr. Tarantino's opinion. There are no other references to Dr. Tarantino's opinion or other reasons provided by the ALJ explaining the rejection of his opinion. The ALJ has not "set forth his own interpretations and explain[ed] why they, rather than [Dr. Tarantino's], [is] correct." *Reddick*, 157 F.3d at 725.

The Commissioner also argues the Court should rely on medical records she believes support rejection of Dr. Tarantino's opinion.[8] But, the ALJ did not rely on any of the records cited to reject Dr. Tarantino's opinion and, to the extent the ALJ relied on them elsewhere in the decision, they are discussed above. The Court cannot create the ALJ's reasons for rejecting the opinion for him from the record and then decide whether those reasons are specific and legitimate and supported by substantial evidence. "[T]he district court errs by developing its own reasons to discount [the treating physician] opinion, rather

---

[8] Two pages of the record cited by the Commissioner are also cited by the ALJ in the paragraph rejecting Dr. Tarantino and Dr. Mohammad's opinion, however, they do not seem to support the ALJ's assertion or the Commissioner's. (AR 618, 624.) The ALJ cites them in support of a lack of objective support for Plaintiff's frequency of migraines based on normal neurological examinations of her head and the Commissioner cites them as generally normal examinations. (AR 25.) However, these pages just list Plaintiff's vital signs and do not address her limitations as a result of any of the diagnoses addressed by Dr. Tarantino or Dr. Mohammad's opinions. (AR 618, 624.) To the extent there is something here that undermines Dr. Tarantino's opinion, it is not apparent to the Court and illustrates why the Court should not find reasons not given or explained by the ALJ to support the rejection of a treating physician opinion. *See Trevizo*, 871 F.3d at 677.

than reviewing *the ALJ's reasons* for substantial evidence." *Trevizo*, 871 F.3d at 677 (emphasis added). When "the ALJ [does] not provide [the] explanations [himself] as a reason to reject [the treating doctor's opinion], the district court err[s] in looking to the remainder of the record to support the ALJ's decision, and we cannot affirm on those grounds." *Id.* at 677 n.4.

The other reasons referenced by the Commissioner, the brevity of the opinion and absence of citation to medical records in the opinion, fail for the same reason. The ALJ did not provide them. *Trevizio*, 871, F.3d at 677 n.4 ("Because the ALJ did not provide these explanations [himself] as a reasons to reject [the treating physician's opinion], we would err in looking to the remainder of the record to support the ALJ's decision.") There is an additional problem with rejecting Dr. Tarantino's opinion based on the form and length. The ALJ cannot "reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, [are] not accompanied by comments, and [do] not indicate to the ALJ the basis for the physician's answers." *Trevizo*, 871 F.3d at 677 n.4 (citing *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). Here, Dr. Tarantino's opinion does include some check boxes as to particular weights and frequency of lifting and time frames she can sit and stand based on her diagnoses. However, it also includes Plaintiff's diagnoses and comments concerning the effects of her prescribed medications, what objective medical evidence supports her pain complaints and why she would have difficulty sustaining work on a full time basis. (AR 788-89.)[9] Rejection based on the form, had the ALJ done so,

---

[9] "[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments." *Trevizo*, 871 F.3d at 677 n.4. The Court does acknowledge there are cases suggesting that check-box or checklist forms may be part of the reason an opinion is rejected, however, those cases also reflect it is not the only reason, and it certainly does not relieve the ALJ of the obligation to provide specific and legitimate reasons supported by substantial evidence for the rejection. *See Baston v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004) (affirming

would not have been proper.

Finally, even "[w]hen a treating physician's opinion is not controlling," it should be "weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675 (citing § 404.1527(c)(2)–(6)). Here, the ALJ did not consider these factors. "This failure alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676.

### b) ALJ's Rejection of Dr. Mohammad's Opinion

Dr. Mohammad provided an opinion, dated January 15, 2014, indicating that Plaintiff suffers from chronic migraines. (AR 790.) He describes her pain level as severe and indicates she is credible as to her claims of pain. (*Id.*) He appears to indicate there is not an objective medical reason for the pain. (*Id.*) He finds Plaintiff would have difficulty sustaining full time work due to chronic migraines. (*Id.*) He estimates she would likely miss more than four days of work per month due to her chronic migraines. (*Id.*)

### (1) Analysis of ALJ's Rejection of Dr. Mohammad's Opinion

The language discussed above, "medical evidence of record does not support these evaluations and assessments of functioning" is applied to Dr. Mohammad as well as Dr. Tarantino. Additionally, the ALJ notes Plaintiff "complained of headaches that worsened after the passing of her grandmother." (AR 25.) He also indicates "[t]here is no objective support for her claims of such frequent migraines, and she had normal neurological examinations of her head." (*Id.*)

As with Dr. Tarantino's opinion, the ALJ does not identify which, if any, opinion by another doctor contradicted Dr. Mohammad's opinion, but for purposes of this analysis,

---

rejection of opinion based on report being brief and conclusory in addition to the report stating it was based claimant's subjective descriptions of pain and the report not being supported by treatment notes); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1988) (affirming rejection of opinion consisting of checked off boxes where the report was internally contradictory and contradicted by all earlier medical reports).

the Court assumes Dr. Mohammad's opinion was contradicted by the state agency reviewers and considers whether the ALJ's decision meets the standard, outlined above, for rejecting a treating physician's contradicted opinion.[10]  *See Trevizo*, 871 F.3d at 676 (finding the ALJ failed to expressly find a treating physician opinion contradicted the rejected opinion, but inferring from the record that it was and finding the decision failed to meet the standard for rejection of a contradicted treating physician opinion).

As discussed above, the ALJ applied the same boilerplate language, discussed above, to Dr. Mohammad's opinion that he did to Dr. Tarantino's — "medical evidence of record does not support these evaluations and assessments of functioning."  As discussed above, it provides no insight into what medical evidence he is referring to as a basis for rejecting Dr. Mohammad's opinion.  *Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").  However, as outlined above, the ALJ does add some additional comments as to Plaintiff's migraines.  The Court addresses each.

The ALJ accurately cites a record indicating Plaintiff's headaches worsened after the passing of her grandmother.  (AR 577.)  The neurology follow-up note from Dr. Mohammad to Dr. Tarantino is from November 12, 2012.  (*Id.*)  However, there is no explanation how this undermines Dr. Mohammad's opinion regarding the severity of Plaintiff's migraines and their impact on her ability to function.  The Court could speculate the ALJ is suggesting the migraines are some sort of short-lived response to the loss of a loved one, but that would not be supported by substantial evidence because Plaintiff was diagnosed with and being treated for migraines at least as early as March 2010 with the frequency increasing steading from 2010 to 2014.  (AR 295, 298-99, 793-95.)  The lack of explanation on this point is of particular consequence because, as explained more below,

---

[10] *See also infra* footnote 7.

14

16cv3096 JLS (BGS)

the ALJ's conclusions regarding the frequency of Plaintiff's migraines and when they began are inaccurate and contradictory.

The ALJ states "[t]here is no objective support for her claims of such frequent migraines, and she had normal neurological examinations of the head. (11F, pp. 10, 16)." (AR 25.) The records the ALJ cites in support of the conclusion that she had normal neurological examinations of the head do not support that conclusion. As noted previously, these two pages of the record provide Plaintiff's vital signs and there are no reports as to neurological examinations at all. (*See infra* footnote 8.)

As to the assertion that there is no objective support for Plaintiff's claims as to the frequency of her migraines, there are at least two problems. First, the ALJ does not explain how Plaintiff's claims as to the frequency of her migraines is a reason to reject Dr. Mohammad's opinion. Second, even if the Court assumes the ALJ rejected Dr. Mohammad's opinion because he thought it was based on Plaintiff's self-reports as to the frequency of her migraines, as the Commissioner now asserts, the ALJ has not provided any explanation or support for that conclusion.

The ALJ does not explain how Plaintiff's claims as to the frequency of her migraines supports rejection of Dr. Mohammad's opinion. The Commissioner asserts that Dr. Mohammad's opinion "was based on Plaintiff's subjective complaints of the frequency of her headaches." (Mot. at 6.) "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999)). However, the ALJ did not give that reason and, as noted above, the Court cannot "develop[] its own reasons to discount [a treating physician] opinion." *Trevizo*, 871 F.3d at 677.

Even if the Court assumes the ALJ was rejecting Dr. Mohammad's opinion because he believed it was based on Plaintiff's reports as to the frequency of her migraines, he makes no findings or otherwise explains to what extent Dr. Mohammad's opinion is based on Plaintiff's subjective complaints or a basis for reaching such a conclusion. Other than

the pages in the record discussed above that would not suggest the opinion is based on Plaintiff's reports, the ALJ only cites the pages of the doctors' opinions. (AR 25.) In rejecting Dr. Mohammad's opinion, the ALJ does not discuss other medical records or notes from Dr. Mohammad or how those records indicate the extent to which Dr. Mohammad's opinion is based on Plaintiff's self-reports. The ALJ does not even discuss the opinion or explain why he is concluding it is based on Plaintiff's claims regarding frequency.[11] The Court cannot determine whether this reason is supported by substantial evidence when the ALJ does not explain what he is basing this conclusion on.

Finally, as with Dr. Tarantino's opinion, the ALJ "did not consider factors such as length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion" that the ALJ should consider when the treating physician's opinion is not controlling. *Trevizo*, 871 F.3d at 676 (citing 20 C.F.R. § 404.1527(c)). "This failure alone constitutes reversible legal error." *Id.*

## B. ALJ's Credibility Determination as to Plaintiff

The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

An ALJ must engage in a two-step analysis when evaluating the credibility of a claimant's testimony regarding subjective pain and impairments. *Garrison*, 759 F.3d at 1014 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citations omitted). "Once the claimant produces medical evidence

---

[11] As discussed below, his reliance on Plaintiff's claims regarding the frequency of her migraines is also problematic because the ALJ makes contradictory findings on this point.

of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)).

Plaintiff has satisfied the first step. The ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 24.) Accordingly, the Court finds the first step satisfied. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("[T]he claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.")

"If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014-15; *see also Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (citing *Lester*, 81 F.3d at 834). These reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284; *see also Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints.").

The ALJ may consider at least the following when assessing a claimant's credibility: (1) reputation for truthfulness; (2) inconsistencies in either the claimant's testimony or between claimant's testimony and conduct; (3) daily activities; (4) work records; and (5) testimony from physicians and third parties concerning the nature, severity and effect of claimant's condition. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Thomas*, 278 F.3d at 958-59; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)). "If the ALJ's credibility finding

is supported by substantial evidence in the record, [then a reviewing court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Although the ALJ found Plaintiff's impairments could be expected to cause her symptoms, he found her statements concerning "the intensity, persistence, and limiting effects of these symptoms . . . not credible for the reasons explained in this decision." (AR 24.) In looking to the ALJ decision to find the ALJ's reasons for finding her not credible, it appears the ALJ doubted her claims as to how long she could walk, the frequency of her migraines, and when her migraines began. (AR 23.) However, the Court can only find the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's claim as to how long she could walk.

The ALJ seems to discredit Plaintiff's claims about her migraines based on her migraines not beginning until 2014. (AR 23.) The ALJ cites a letter from Dr. Holmes that indicates Plaintiff had been seen since March of 2014 for migraines. (*Id.*) The ALJ characterizes this as an indicator that Plaintiff's migraines are a more "recent condition." (*Id.*) This is not a specific, clear, and convincing reason to reject Plaintiff's claims as to the severity of her symptoms from migraines. Even if the Court only looks to the ALJ's own summary of Plaintiff's medical history, it is clear Plaintiff was being treated for migraines by her neurologist, Dr. Mohammad, for years prior to 2014. (AR 24.) As noted above, she started receiving treatment for migraines as early as 2010 and they increased in the following years. (AR 295, 298-99, 793-95.)

As to the frequency of Plaintiff's migraines, the ALJ found Plaintiff "did not tell any medical providers she had migraines as frequent as she asserted at the hearing, which is three to four times a day." (AR 23.) There are two problems with discrediting Plaintiff on this basis. First, as noted above, the ALJ reaches two different conclusions as to Plaintiff's testimony as to the frequency of her migraines. He finds she is reporting three to four per day here, (AR 23), and later in the decision, (AR 25), but indicates earlier in the decision that she testified she had migraines about two to four times per week. (AR 23.) It might make sense to discredit Plaintiff based on contradictory reporting of the frequency of her

migraines.[12]  However, that is not what the ALJ did.  The ALJ makes two contradictory findings as to the frequency Plaintiff reported and then relies on one to discredit her.  The Court cannot find that is a specific, clear, and convincing reason to reject her claims as to the frequency of her migraines.

The ALJ notes that Plaintiff is "able to walk with her father for about 30 minutes." (AR 23.)  The ALJ does not specifically explain how this undermines her claims, but he does note earlier in the discussion of her claims regarding her symptoms that she claims in her function report that she is unable to walk for more than a few minutes.[13]  (AR 23.)  This provides a specific, clear, and convincing reason for discrediting Plaintiff's claim as to the length of time she can walk.

The Commissioner argues the ALJ discounted Plaintiff's allegations because they were not supported by the objective medical evidence, but the ALJ does not indicate that is the reason he is discrediting her symptoms.  And, to the extent the ALJ did reject Plaintiff's claims as to the severity of her symptoms based on objective medical evidence he failed to "state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."  *Smolen*, 80 F.3d 1284; *see also Parra*, 481 F.3d at 750 ("The ALJ must provide clear and convincing reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints.")

///

---

[12] Her testimony at the hearing on this point was somewhat unclear until her counsel clarified through questioning that she has both severe headaches and migraines, for which she takes different medication.  (AR 49.)  She testified the migraines are worse and she gets them two to four times a week.  (AR 50.)

[13] Plaintiff's Function Report, completed on October 27 or 28, 2012 does reflect she was unable to stand, sit, walk, or stairs for more than a few minutes, (AR 250), and she did testify at her hearing that she accompanies her father on a 30 minute walk up the block and back.  (AR 45.)  She does not indicate how frequently, although she refers to it as his maintenance program for his COPD.  (*Id.*)

The ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's allegations as to the onset of her migraines or their frequency, but did provide a specific, clear, and convincing reason for rejecting Plaintiff's claim regarding the length of time she could walk.

## C. Harmless Error

Harmless error analysis applies in social security cases. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination.'" *Id.* at 1173 (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (An ALJ's reliance on erroneous reasons is harmless so long as the "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence"). "[W]here the magnitude of an ALJ error is more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Id.* The Court cannot find the above errors, particularly the rejection of two treating physicians' opinion harmless. The ALJ's RFC differs in numerous respects from Dr. Tarantino and Dr. Mohammad's opinions, including lifting 20 pounds frequently, hourly unscheduled breaks, sitting for six hours in an eight hour day, and missing more than four days per month of work. (AR 22, 53, 788-90.) If these opinions were credited, even in part, it would be consequential to the ultimate disability determination.

## V. Remand

The Court recommends the matter be remanded to the agency for further administrative proceedings. "The rare circumstances that result in a direct award of benefits are not present in this case." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2018). "When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Id.* at 1045 (citing *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). The credit-as-true analysis "permits, but does not require, a direct award of benefits on

review but only where the [ALJ] has not provided sufficient reasoning for rejecting testimony and there are no outstanding issues on which further proceedings in the administrative court would be useful." *Id.* at 1044. Under the three-part rule, the Court first considers "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* at 1045 (quoting *Garrison*, 759 F.3d at 1019). This step is met for the reasons set forth above.

However, at the second step, the Court considers "whether there are 'outstanding issues that must be resolved before a disability determination can be made' and whether further administrative proceedings would be useful.'" *Id.* (quoting *Treichler*, 775 F.3d at 1101). "In evaluating this issue, [the Court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F3d at 1104-05. "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105. When, as here, the ALJ's findings regarding the claimant's subjective symptom testimony are inadequate, remand for further findings on credibility is appropriate. *See Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995). As noted above, the Commissioner attempts to provide reasons the ALJ did not by citing medical records the ALJ did not rely on in his cursory rejection of Dr. Tarantino and Dr. Mohammed's opinions. Additionally, Plaintiff attempts to undermine the ALJ's conclusion as to those opinions sheer volume of references to Plaintiff's medical records. As discussed above, the Court is not going to create reasons the ALJ did not give or support, but the Court does find under these circumstances, further administrative proceedings are necessary to allow the ALJ to do this evaluation. The Court recommends the case be remanded.

## CONCLUSION

Based on the above reasoning, the undersigned Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment (ECF No. 20) be **GRANTED**, that the Commissioner's cross-motion for summary judgment (ECF No. 22) be **DENIED**, and that

16cv3096 JLS (BGS)

the case be **REMANDED** to the agency for further proceedings.

      This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(1).

      **IT IS ORDERED** that no later than **<u>March 7, 2018</u>**, any party to this action may file written objections with the Court and serve a copy to all parties. The document should be captioned "Objections to Report and Recommendation."

      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **<u>March 14, 2018</u>**.

Dated: February 20, 2018

Hon. Bernard G. Skomal
United States Magistrate Judge

16cv3096 JLS (BGS)